HARMEET K. DHILLON, Assistant Attorney General (CABN 207873)
R. JONAS GEISSLER, Deputy Assistant Attorney General (NJBN 025752001)
KEVIN J. KIJEWSKI, Deputy Chief (ILARDC 6226876)
JANE E. ANDERSEN, Trial Attorney (NYRN 4651519)
KATHERINE DUTCHER, Trial Attorney (CABN 313010)
DAVID W. KNIGHT, Trial Attorney (MDAN 0412140410)
U.S. Department of Justice
950 Pennsylvania Ave., N.W.- 4CON
Washington, DC 20530
Telephone: (202) 598-6580
Jane.Andersen2@usdoj.gov
Katherine.Dutcher@usdoj.gov
David.Knight@usdoj.gov

CRAIG H. MISSAKIAN, United States Attorney (CABN 125202)
KENNETH BRAKEBILL, Chief, Civil Division (CABN 196696)
SAVITH IYENGAR, Assistant United States Attorney (CABN 268342)
Phillip Burton Federal Building
450 Golden Gate Avenue
Telephone: (415) 436-7200
Savith.Iyengar@usdoj.gov

*Attorneys for Plaintiff United States of America*

[additional counsel listed on next page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

United States of America,

Plaintiff,

vs.

Uber Technologies, Inc.,

Defendant.

Case No. 3:25-cv-7731-SK

**FURTHER JOINT CASE MANAGEMENT STATEMENT IN ADVANCE OF OCTOBER 26 CASE MANAGEMENT CONFERENCE**

ALAN E. SCHOENFELD (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

BENJAMIN J. YOOD (SBN 301688)
jamie.yood@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, DC 20037
Telephone: (202) 663-6695
Facsimile: (202) 663-6363

*Attorneys for Defendant Uber Technologies, Inc.*

The parties jointly submit this Further Joint Case Management Statement, pursuant to Civil Local Rule 16-9(d), the Standing Order for All Judges of the Northern District of California, the Court's Standing Order, and the Court's March 23, 2026, Case Management and Pretrial Order, ECF No. 32, in advance of the Further Case Management Conference ("CMC") set for October 26, 2026.

Since the parties' Initial CMC on March 23, 2026, the parties have been cooperatively engaged in discovery and anticipate that non-expert discovery will be completed on time on March 9, 2027. The parties attended a settlement conference with the Honorable Magistrate Judge Laurel Beeler in August and agreed to confer about what a trial will look like given the large number of potentially aggrieved persons and to discuss those issues with the Court at the next case management conference. ECF No. 51. Accordingly, the parties now respectfully request to discuss the mechanism of how a trial might proceed based on the number of potential aggrieved persons.

**1. JURISDICTION & SERVICE**

The parties agree that the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345. Defendant Uber Technologies, Inc. reserves the right to raise any counterclaims and state the basis of subject-matter jurisdiction over such claims at that time.

The parties also agree that venue and personal jurisdiction is proper in the San Francisco Division of the United States District Court for the Northern District of California and no parties remain to be served.

**2. FACTS**

The United States contends that Uber provides demand-responsive transportation in the United States and that Uber denies thousands of people with disabilities full and equal enjoyment of its transportation services. The United States asserts that Uber is aware of—but fails to prevent—its widespread discrimination in violation of the ADA. Through discovery, the United States obtained data from Uber which the United States contends show that Uber has received more than 52,000 complaints from over 33,000 people alleging ride-denials based on service animals or assistive devices between September 11, 2020, and May 29, 2026.

Uber denies the allegations and contends that: (1) Uber—a technology company that operates smartphone apps and online marketplaces for the rideshare, delivery, and freight industries—is not subject to liability pursuant to Title III of the ADA because it is not "primarily engaged in the business of

transporting people" pursuant to 42 U.S.C. § 12184; (2) Uber is not liable for engaging in a pattern or practice of discrimination against riders with disabilities based on sporadic instances of independent drivers who allegedly (and in some cases, admittedly) violated Uber's express nondiscrimination policies; and (3) Uber cannot be held vicariously liable for the alleged misconduct of independent drivers.

**3. LEGAL ISSUES**

A. Whether Uber is "primarily engaged in the business of transporting people" pursuant to 42 U.S.C. § 12184 and covered under Title III of the ADA;

B. Whether Uber is engaging in a pattern or practice of discrimination by failing to provide full and equal enjoyment of its transportation services to people with disabilities in violation of 42 U.S.C. § 12184; and 49 C.F.R. pt. 37;

C. Whether Uber discriminates against a person or group of persons on the basis of disability in violation of 42 U.S.C. § 12188(b)(1)(B)(ii) and 28 C.F.R. § 36.503 and such discrimination raises an issue of general public importance. *See also* 42 U.S.C. § 12101(a)(3) and (5), (b)(1).

D. Whether the injunctive relief sought by the United States is appropriate.

**4. MOTIONS**

On March 5, 2026, the Court denied Uber's motion to dismiss the complaint. ECF No. 27. Uber filed its Answer and Affirmative Defenses on April 17, 2026. ECF No. 38. The parties anticipate cross-moving for full or partial summary judgment at the close of discovery, which are scheduled to be fully briefed by October 11, 2027. ECF No. 32.

**5. AMENDMENT OF PLEADINGS**

No amendments to the pleadings are anticipated at this time.

**6. EVIDENCE PRESERVATION**

On May 7, 2026, the Court entered the parties' Stipulated Order re: Discovery of Electronically Stored Information ("ESI Order"), Dkt. 44, and Stipulated Protective Order ("Protective Order"), Dkt. 45.

**7. DISCLOSURES**

The parties exchanged their initial disclosures on February 6, 2026. On March 16, 2026, Uber wrote to the United States regarding its contention that the United States' initial disclosures are deficient, including failure to list all individuals likely to have discoverable information according to the

government's Complaint, and failure to compute damages or make available any evidence supporting a computation. The United States amended and supplemented its initial disclosures on June 3, 2026. On October 12, 2026, Uber again served the United States a letter requesting that the government address the same purported deficiencies that had not been addressed by the June 3, 2026 supplemental disclosure. Uber requested a response by November 2, 2026. Uber anticipates serving supplemental initial disclosures identifying additional witnesses.

**8. DISCOVERY**

The parties have been working cooperatively to complete non-expert discovery by the March 9, 2027, deadline.

Uber served the United States with its First Set of Interrogatories and First Set of Requests for Production on March 23, 2026. The United States responded to Uber's First Request for the Production of Documents requests on May 22, 2026; produced responsive documents on June 3, 2026; and produced a privilege log on July 31, 2026. The United States served its responses to Uber's Interrogatories on June 8, 2026. On October 12, 2026, Uber sent a letter to the United States concerning the sufficiency of the United States' initial disclosures and discovery responses, including its damages computations.

The United States served Uber with its First Set of Interrogatories and First Set of Requests for Production on March 10, 2026. Uber responded to the United States' First Request for the Production of Documents on May 11, 2026, with a promise to produce documents on a rolling basis and to confer with the United States concerning custodians and search terms. To date, Uber has made seven productions of documents, having produced 17,227 documents and tens of thousands of rows of complaint-level and trip-level data. Uber has agreed to continue to produce documents in connection with over 52,000 user complaints on a rolling basis, and intends to complete this production by February 9, 2027. The parties have agreed that Uber will use search terms and custodians to identify materials responsive to certain of the United States' discovery requests. On September 29, 2026, the parties agreed to a list of 10 custodians. The United States provided edits to Uber's proposed search terms and requested a response regarding these revisions on September 29, October 6, and October 14, 2026, but Uber has not yet responded. Uber

is still processing data and determining hit counts, and will respond to the government as soon as it is able. On May 26, 2026, Uber responded to the United States' First Set of Interrogatories and supplemented its responses on September 18, 2026.

No depositions have been taken yet. On October 16, 2026, the United States requested to confer about the scheduling of five depositions to take place in November 2026, December 2026, and January 2027. Should any discovery disputes arise that cannot be resolved by the parties, the parties will bring such disputes to the Court's attention in a timely manner in accordance with the Court's rules.

**9. CLASS ACTIONS**

Not applicable.

**10. RELATED CASES**

The parties are not aware of any related cases.

**11. RELIEF**

The United States requests that the Court grant declaratory relief, injunctive relief, and monetary damages as follows:

A. Grant judgment for the United States and declare that Uber's actions, policies, and practices, as alleged in the Complaint, violate Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 49 C.F.R. pt. 37;

B. Enjoin Uber, its officers, agents, employees, drivers, and all others in concert or in participation with it, from discriminating against individuals with disabilities, and failing to comply with Title III and its implementing regulation;

C. Order Uber to modify its policies, practices, and procedures to comply with Title III and its implementing regulation;

D. Order Uber to provide ADA training to its officers, agents, employees, drivers, and all others in concert or in participation with it to a proficient level to meet ADA requirements;

E. Subject to discovery, award monetary damages of $125 million, including compensatory damages for emotional distress, pain and suffering, and other injuries, to persons aggrieved by Uber's actions or failures to act, pursuant to Title III and its implementing regulation;

i. The amounts the United States will seek for aggrieved persons' physical, mental, and emotional distress; loss of opportunity, inconvenience, humiliation, and dignitary harms are not subject to a calculation and will be determined by a jury. The United States also seeks compensation for out-of-pocket and economic costs incurred by aggrieved persons because of Uber's discrimination. The United States contends that information necessary to calculate these damages is within Uber's possession and the United States is seeking this information in discovery.

F. Assess a civil penalty against Uber pursuant to 42 U.S.C. § 12188(b)(2)(C), to vindicate the public interest; and

G. Order such other appropriate relief as the interests of justice may require, together with the United States' costs and disbursements in this action.

Uber maintains that the government is not entitled to any relief and reserves all of its defenses to liability, damages, and as to claims for injunctive relief.

**Estimate of Case Value**. Pursuant to the Court's Case Management and Pretrial Order, Dkt. 32, the parties "include [here] an estimate regarding the value of the case, including a good faith assessment of damages."

**United States' Statement on Valuation**: The United States now estimates that the value of this case may be more than the $125 million originally estimated in its civil cover sheet when the case was commenced. Through discovery, the United States has learned that Uber has received more than 52,000 complaints, from over 33,000 people, alleging ride-denials based on service animals or assistive devices between September 11, 2020, and May 29, 2026. Based on the United States' preliminary review of these complaints, the United States contends that a large percentage of the complaints are valid and that the United States will be able to establish that Uber violated the ADA against a group of persons and as part of a pattern or practice of discrimination. Additionally, this number is an undercount because the discrimination is ongoing; Uber has received thousands of disability-based discrimination complaints not

involving service animals or assistive devices; and not every person complains to Uber when they face discrimination. The United States' assessment is ongoing as Uber has not completed its production of relevant documents.

The United States seeks damages to compensate aggrieved persons for the mental anguish or emotional distress caused by Uber's discrimination. *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 866 (9th Cir. 2017). In the Ninth Circuit, testimony, alone, can support emotional distress damages. *Zhang v. Am. Gem Seafoods*, 339 F.3d 1020, 1040 (9th Cir. 2003). To evaluate the amount a jury may award aggrieved persons for emotional distress and mental anguish, the United States looks to prior damage awards. Most directly on point, a blind Uber rider in California was awarded $324,000 through arbitration for 14 instances of discrimination in which Uber denied her service or otherwise mistreated her because she uses a service animal. *Irving v. Uber Tech., Inc.*, AAA Case No. 01-18-0002-7614 (2021), https://perma.cc/6UUN-KJWE. The arbitrator assigned awards ranging from $4,000 to $75,000 for each of the 14 incidents for an average of $23,143 per incident. *Id.* In a case brought by the United States under Title III of the ADA, a judge awarded $125,000 in damages to each of three aggrieved persons for emotional distress caused when their doctor refused to provide surgery because of their HIV status. *United States v. Asare*, 476 F. Supp. 3d 20, 36 (S.D.N.Y. 2020). And over 30 years ago, the Ninth Circuit remanded a case under the Fair Housing Act in which a court only awarded $250 to two plaintiffs who were told they could not rent an apartment because of their race. *Johnson v. Hale*, 13 F.3d 1351, 1354 (9th Cir. 1994). The Ninth Circuit directed the district court to award each plaintiff damages of not less than $3,500.

Conservatively estimating that only 75 percent of the 52,000 incidents are ADA violations and that a jury would only award $4,000 per incident, Uber's liability would be $156 million (52,000 x 75% x $4,000 = $156 million). But if a jury awarded, on average, $23,143 per incident, Uber's liability would be $903 million (52,000 x 75% x $23,143 = $903 million).

**<u>Uber's Statement on Valuation</u>**: Uber denies liability and maintains that neither the United States nor any "aggrieved person" is entitled to any relief from Uber. Accordingly, Uber's good-faith assessment is that the value of this case is $0. In any event, the availability and calculation of any relief sought by the United States would depend on numerous disputed and individualized factual and legal issues to be

determined at trial, including but not limited to the identification of any "persons aggrieved," whether any such individuals suffered a compensable injury, and the extent to which Uber has already provided refunds or other relief.

**12. SETTLEMENT AND ADR**

The parties attended a settlement conference with Magistrate Judge Laurel Beeler on August 11, 2026, ECF No. 51. The parties have continued settlement discussions and intend to discuss the mechanics of trial at the case management conference to plan for trial of this action and potentially aid the parties in resolution.

**13. OTHER REFERENCES**

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**14. NARROWING OF ISSUES**

The parties have not identified any issues that can be narrowed by agreement at this time, but will continue to work jointly to do so.

**15. SCHEDULING**

The Court set the following schedule. Dkt. 32.

| **Event** | **Date** |
|---|---|
| Close of Fact Discovery | March 9, 2027 |
| Expert Disclosure (Initial) | April 8, 2027 |
| Expert Disclosure (Rebuttal) | June 7, 2027 |
| Close of Expert Discovery | July 14, 2027 |
| Rule 56 and *Daubert* Motion Deadline | September 14, 2027 |
| Hearing on Rule 56 and *Daubert* Motions | October 25, 2027 |
| Submission of Joint Pretrial Conference Statement | January 3, 2028 |
| Pretrial Conference | January 17, 2028 |
| Trial | Begins February 14, 2028 |

**16. TRIAL**

Trial is currently scheduled to commence on February 14, 2028, and last 10 days. ECF No. 32. For the reasons discussed below, the parties have conferred and propose that the Court permit trial to proceed in two phases, which would require a modification to the scheduling order. The parties' respective statements concerning trial are set forth below:

**United States' Statement on Trial**

**Liability:** The United States asserts that Uber is in violation of 42 U.S.C. § 12184, for failing to provide full and equal enjoyment of its transportation services to people with disabilities. The United States assert that a group of persons has been discriminated against; the discrimination is a matter of general public importance; and that the discrimination amounts to a pattern or practice of discrimination. To establish a pattern or practice, the United States intends to demonstrate that the discrimination is "more than the mere occurrence of isolated or 'accidental' or sporadic discrimination acts." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977).

The United States is determining how many aggrieved persons it will need to call to testify to establish liability. The number may depend on summary judgment or evidentiary determinations. But absent summary judgment or a stipulation between the United States and Uber as to how many instances of discrimination are sufficient to establish a pattern or practice, the United States must be able to call as many people as necessary to meet the United States' burden at trial and overcome Uber's anticipated argument that any proven discrimination is nothing more than isolated or sporadic incidents insufficient to constitute a pattern or practice.

**Damages**: Where liability is established, Congress authorized the Attorney General to seek monetary damages for persons aggrieved. 42 U.S.C. § 12188(b)(2)(B); *see also Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (monetary damages available in suits brought by the United States). This provision is important because damages are only available when sought by the Attorney General, as Title III of the ADA does not provide for damages in private actions.

Through discovery, the United States has now identified over 30,000 potential aggrieved persons. Because the number of victims entitled to monetary damages may present burdens on the Court's resources, the United States seeks to discuss how the United States can most efficiently prosecute its case and pursue statutory rights to seek monetary damages on behalf of aggrieved persons.

**United States' Suggested Process**: The court may hold separate trials of one or more separate issues "[f]or convenience . . . or to expedite and economize." Fed. R. Civ. Pro. 42(b). The United States suggests that trial be bifurcated into a liability phase (with a modification) and then additional proceeding for the purposes of imposing a remedy and awarding individual damages. During the liability phase, the United States will ask a jury to find that Uber is: (1) a covered entity under the ADA because it provides transportation services; and (2) engaged in a pattern or practice of discrimination against riders with disabilities; and/or (3) that a group of persons has been discriminated against because of their disabilities. For each aggrieved person the United States calls to testify at trial to establish liability, the United States will also seek to illicit testimony sufficient for a jury to award damages for the emotional distress, mental anguish, loss of time, and any other compensatory damages experienced by the aggrieved person because of Uber's discrimination. Thus, should a jury find Uber liable under the ADA, a jury may also determine what amount of monetary damages each aggrieved person who testified should be awarded.

Then, should the United States establish Uber's liability under the ADA, the United States asks that the Court schedule additional proceedings for the purpose of imposing an equitable remedy and establishing any damages (that are causally related to Uber's discrimination) as to the remaining aggrieved persons who did not testify during the liability phase. *See c.f. Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361 (1977) (pattern or practice claim under Title VIII of the Civil Rights Act) (in pattern or practice suit, permitting "additional proceedings after the liability phase of the trial to determine the scope of individual relief); *United States v. Cochran*, 39 F. Supp. 3d 719, 739 (E.D.N.C. 2014) (ordering a bifurcated jury trial in pattern or practice claim under the Fair Housing Act); *see also C.R. Dep't v.*

*Grimmway Enters*., 800 F. Supp. 3d 1084 (E.D. Cal. 2025) (pattern or practice claim under Title I of the ADA). Prior to trial, the parties can discuss how best to group aggrieved persons for efficiency purposes. For example, one group could be aggrieved persons who are blind, travel with a service dog, and have repeatedly experienced Uber drivers cancelling their ride after sending a text message alerting the Uber driver they are traveling with a service animal. The United States believes that this process will be the most efficient use of the Court's and parties' resources while preserving the United States' statutory right to seek monetary damages on behalf of all aggrieved persons/witnesses and Uber's due process rights. The additional damages proceedings may also aid the parties in a resolution on the remaining damages claims.

Accordingly, the United States requests that the Court adopt the United States' proposed approach and modify the scheduling order to set the February 14, 2028, trial date to be a Phase I liability trial and then schedule additional Phase II proceedings thereafter for the purposes of damages. After trying select cases within each such group of aggrieved persons in Phase II, the Court could then provide the parties with time for further settlement efforts before scheduling and/or proceeding with the remaining trials.

**Uber's Statement on Trial**

Uber is in general agreement with the two-phase trial structure proposed by the United States—beginning with 10-day trial on whether Uber is covered by the ADA, violated the Section 12184, engaged in a pattern or practice of discrimination against disabled riders, and is liable for monetary damages to the witnesses who testify—provided that the parties can work out the numerous unresolved practical and procedural questions that would bear directly on discovery, trial preparation, and the orderly adjudication of individualized claims and defenses. Among other issues, the proposal does not address the process or timing for identifying the individuals on whose behalf the government intends to seek damages at the proposed Phase 1 trial, let alone how individualized claims and defenses would be adjudicated in any subsequent phase. Uber believes the parties should meet and confer about the

numerous open issues on Phase 1 trial structure, including a timing and process for the United States to identify the witnesses that will testify and seek damages at a Phase 1 trial.

**17. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

The United States has no non-party interested entities or persons to disclose.

Uber filed a Local Rule 3-15 statement, which certified no conflict of interest to report; as of this date, there remain no firms, partnerships, corporations, or other entities known by Uber to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding. *See* Dkt. 11. Uber is a publicly held company with no parent company. *See* Dkt. 10.

**18. PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**19. OTHER MATTERS**

At this time, the parties do not believe there are other matters that relate to the just, speedy, and inexpensive disposition of this matter.

IT IS SO STIPULATED.

Dated: October 19, 2026

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Deputy Assistant Attorney General
Civil Rights Division

/s/ Jane E. Andersen________
LUIS PEREZ
Director
KEVIN J. KIJEWSKI
Deputy Chief
JANE E. ANDERSEN
KATHERINE DUTCHER
DAVID W. KNIGHT
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
CRAIG H. MISSAKIAN
United States Attorney

SAVITH IYENGAR
Assistant United States Attorney

*Attorneys for Plaintiff United States of America*

/s/ Alan E. Schoenfeld________________
ALAN E. SCHOENFELD (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 937-7294
Facsimile: (212) 230-8888

BENJAMIN J. YOOD (SBN 301688)
jamie.yood@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, DC 20037
Telephone: (202) 663-6695
Facsimile: (202) 663-6363

*Attorneys for Defendant Uber Technologies, Inc.*

* *In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.*